# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **DANIEL PETRUSKY** | : | **NO. 15-461** |
| | : | |

**Goldberg, J.**                                                                                         **May 23, 2018**

## MEMORANDUM

On October 28, 2015, Defendant Daniel Petrusky pleaded guilty to a one-count information charging him with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). On March 13, 2017, Defendant filed a *pro se* Petition for Habeas Corpus Relief under 28 U.S.C. § 2255. United States Magistrate Judge Thomas Rueter issued a Report and Recommendation ("R&R") recommending that the Motion be denied in its entirety. Defendant submitted lengthy objections to the R&R. For the following reasons, I will adopt the R&R, overrule the objections, and deny the Petition for Writ of Habeas Corpus.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

The factual history, as thoroughly set forth in the R&R, states:

> In 2015, the Federal Bureau of Investigation ("FBI") took control of a website, called Playpen, on which individuals posted images of and links to child pornography. The Playpen website was operated on the Tor network. When a user accesses a Tor site using Tor software, his true IP address is hidden from the operator of the site. Because the FBI had difficulty identifying who was accessing the Playpen website, the FBI obtained a search warrant from a United States Magistrate Judge in the Eastern District of

Virginia, the location to which the FBI moved the website's computer. The search warrant authorized the FBI to deploy a Network Investigative Technique ("NIT") to assist in identifying those who accessed the website. Pursuant to the warrant, the FBI was permitted to send communications to the computer of one who logged on to the Playpen site during the thirteen days that the FBI allowed the site to continue to operate. The use of the NIT caused the user's computer to send a signal back to the FBI, which helped the FBI identify its true IP address, and thereby determine where the computer was located.

Defendant, Daniel Petrusky, utilized the username "danny430" to access the Playpen site. The use of the NIT by the FBI caused a signal to be returned to the FBI when "danny430" logged onto the site. This information identified the true IP address from which "danny430" connected to the child pornography website and identified defendant's computer as the one accessing the site using "danny430." Based on the above information the FBI determined that Petrusky was accessing the Playpen website.

On May 29, 2015, FBI agents obtained a search warrant from a United States Magistrate Judge in the Eastern District of Pennsylvania to search defendant's home, located within this district. During the search, the agents seized a computer and an external hard drive. The FBI examined and seized items and discovered still images and videos which contained visual depictions of minors engaged in sexually explicit conduct. The FBI also found a 170-page document entitled "How to practice child love," which included an introductory heading describing the publication as an "exclusive step-by-step guide for practicing safe and fun sex with children." The FBI determined that the external hard drive contained approximately 436 videos and 1,707 still images depicting minors, including prepubescent minors, engaged in sexually explicit conduct.

At the time of the search, FBI agents asked the defendant to step outside his home away from the presence of his wife. Defendant admitted to the agents that he had downloaded child pornography a few months prior to the interview. He stated that he accessed a site via the internet using the name "danny430." He further explained that he downloaded the file to an external hard drive.

(R&R 1–3.)

### B. Procedural Background

Defendant pled guilty, on October 28, 2015, to one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). On January 28, 2016, I sentenced Defendant to a term of imprisonment of seventy months, $7,500 in restitution, ten years of supervised release, no fine, and a special assessment of $100. Defendant did not file a direct appeal to the United States Court of Appeals for the Third Circuit.

On March 13, 2017, Defendant filed a *pro se* motion pursuant to 28 U.S.C. § 2255 and, on May 1, 2017, the Government filed a response. I referred the motion to United States Magistrate Judge Thomas J. Rueter who appointed counsel for Defendant. Following additional briefing, Judge Rueter issued an R&R on September 27, 2017, recommending that the motion be denied. Defendant, through counsel, filed objections. The Government filed a response to the objections and, on February 21, 2018, the Government submitted a notice of supplemental authority.

## II. STANDARD OF REVIEW

### A. Standard of Review of a Magistrate Judge's Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(B), a district court judge may refer a habeas petition to a magistrate judge for proposed findings of fact and recommendations for disposition. When objections to a report and recommendation have been filed, the district court must make a *de novo* review of those portions of the report to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In performing this review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### B.     Standard of Review for a Petition Pursuant to 28 U.S.C. § 2255

A prisoner in federal custody may file a motion in the trial court challenging the validity of his sentence under 28 U.S.C. § 2255. See Morelli v. United States, 285 F. Supp. 2d 454, 458 (D N.J. 2003). This provision reads in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Under this statutory framework, a federal prisoner shall be released from custody if the sentence "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack." Morelli v. U.S., 285 F. Supp. 2d 454, 458 (D.N.J. 2003) (citing 28 U.S.C. § 2255). To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a "fundamental defect" resulting in a "complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." See, e.g., United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989); Morelli, 285 F. Supp. 2d at 458–59 (citations omitted).

### III.   DISCUSSION

Defendant sets forth three objections to the R&R. I consider each individually.

A.  **Whether the Magistrate Judge Committed Error by Failing to Conduct an Evidentiary Hearing Regarding Defendant's Claim that Trial Counsel Was Ineffective for Failing to Litigate a Motion to Suppress Defendant's Statement to the FBI**

Defendant's first objection concerns his claim that trial counsel was ineffective for failing to file a motion to suppress his statement given to the FBI just outside his home. He asserts that the interview with FBI agents at the time of the search was a custodial interview. Although the lack of Miranda warnings rendered his statement subject to suppression, he argues that counsel erroneously failed to seek suppression of that statement.

Upon review of this claim, Judge Rueter acknowledged that, under the facts as alleged by Defendant, the interview was potentially custodial, meaning that counsel should have sought suppression. Judge Rueter found, however, that Defendant had failed to establish the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984). He noted that the facts of the case as set forth by the Government at the plea would have been—absent any of the verbal admissions Defendant made to the agents—sufficient to convict Defendant of receipt and possession of child pornography. This evidence included: (1) the log evidence from the FBI-operated server showing that a person with the username "danny430" had established an account on the site and had logged onto it for a total of 14 hours and 59 minutes; (2) the log evidence that "danny430" made four postings to the website, which were comments or links related to child pornography; (3) the NIT investigative tool showing that "danny430" connected to the website from a certain IP address, which was the one used by Defendant at his home at the time of the connections; (4) the fruits of the search warrant at Defendant's home, including 436 videos and 1707 still images on Defendant's external hard drive, as well as a 170-page document entitled "How to practice child love." Judge Rueter determined that because this and other evidence would have been available to the Government even without the statements Defendant made to the agents, a jury

would have had a more than substantial basis on which to render a conviction. In turn, Judge Rueter concluded that Defendant failed to meet his burden of showing that he would not have pled guilty to the Criminal Information had counsel successfully litigated a motion to suppress. Given this finding, Judge Rueter held that no evidentiary hearing was necessary.

Defendant now objects on the ground that the failure to conduct an evidentiary hearing was in error. Without addressing the R&R's finding that Defendant had not established prejudice, Defendant argues that the Magistrate Judge should have conducted a hearing to determine whether Defendant was in custody during his interrogation by the agents and whether trial counsel should have moved to suppress those statements.

This objection misunderstands the applicable law. The clearly-established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668 (1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (acknowledging Strickland as the controlling authority). Under the first Strickland prong, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688–90. Under the second Strickland prong, a defendant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Strickland, 466 U.S. at 694–95. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. To sustain a plausible ineffective assistance of counsel claim, a defendant must establish that the attorney's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. See Wells v. Petsock, 941 F.2d 253, 259–60 (3d Cir. 1991).

Notably, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d. Cir. 2006). "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Coley v. Muhally, No. 14-2328, 2018 WL 1706360 (M.D. Pa. Apr. 9, 2018).

Here, Judge Rueter correctly found that even without the challenged evidence obtained by the FBI agents' interrogation of Defendant outside his home, the evidence of Defendant's guilt was so overwhelming that a jury, more likely than not, would have convicted him. On that basis alone, Judge Rueter appropriately determined that the ineffective assistance of counsel claim was meritless. Defendant does not challenge the propriety of this ruling. As the law is well established that disposition of an ineffectiveness claim on the prejudice prong alone is sufficient, I will overrule Defendant's objection and adopt the R&R on this issue.

### B. Whether the Magistrate Judge Committed Error by Failing to Conduct an Evidentiary Hearing Regarding Defendant's Claim that Trial Counsel Rendered Ineffective Assistance by Failing to Litigate Motion to Suppress the Search Warrant

In his second habeas claim, Defendant alleges that trial counsel was ineffective for failing to move for suppression of the search warrant on his home issued by this Court. He reasons that, in issuing the challenged search warrant, this Court relied on evidence obtained from the search warrant issued in the Eastern District of Virginia that permitted the FBI to use an NIT to identify the "danny430" IP address and connect it to Defendant.

On review of this issue, Judge Rueter remarked that any motion to suppress the NIT warrant would have been denied as meritless. Although the issue had yet to be addressed by the

7

United States Court of Appeals for the Third Circuit, Judge Rueter found that the Eighth and Tenth Circuits had considered the matter and refused to suppress evidence obtained as a result of the same Virginia NIT warrant.[1] Likewise, approximately sixty-two of the sixty-seven district courts to address the same NIT warrant—including two decisions from the Eastern District of Pennsylvania—refused to suppress its fruits. Therefore, the R&R concluded that even if counsel had filed a motion to suppress the NIT warrant, the motion would have been denied by the trial court for the same reasons articulated in the opinions of the Eighth and Tenth Circuits and the multiple district court decisions on this issue. In turn, because counsel cannot be ineffective for failing to pursue meritless claims, see U.S. v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999), Judge Rueter found that an evidentiary hearing to consider Defendant's ineffectiveness claim would have been fruitless.

Defendant objects, arguing that the Fourth Amendment to the Constitution and Federal Rule of Civil Procedure 41(b) preclude the use of "legal authority from a single warrant issued in the Eastern District of Virginia to hack thousands of computers worldwide by installing malicious software for the purpose of investigating child pornography by searching the computers of unknown numbers of individuals whose identities and crimes were previously unknown to the Government before launching this passive worldwide search." (Def.'s Objections 14.) He asserts that, under the Fourth Amendment, the warrant was lacking in that it did not provide either the particular computer to be searched or the location of the search. Thus, he contends that the Magistrate Judge should have conducted a "fact-intensive" inquiry, via an evidentiary hearing, to determine whether this Fourth Amendment violation could be excused

---

[1] As noted by Judge Rueter, the underlying NIT warrant executed in Virginia has implicated more than a hundred defendants across the United States and, thus, has been the subject of extensive litigation.

under the doctrine of good faith. If the evidence revealed that it could not, Defendant argues that his trial counsel's performance could be deemed ineffective.

Subsequent to Defendant's filing of his objections and the Government's response, the United States Court of Appeals for the Third Circuit issued a decision in United States v. Werdene, 883 F.3d 204 (3d Cir. 2018). There, the Court addressed whether the precise NIT warrant issued in the Eastern District of Virginia in connection with the FBI's investigation into Playpen was invalid and called for suppression of the fruits of that search. Id. at 206–07. As an initial matter, the Court determined that the NIT warrant violated Federal Rule of Criminal Procedure 41(b), which provides that a magistrate judge may "issue a warrant to search for and seize a person or property located within the district." Id. at 210–12 (quoting Fed. R. Crim. P. Rule 41(b)(1)).[2] The Court then found that the Rule 41(b) violation was of a "constitutional magnitude" under the Fourth Amendment because the issuing magistrate exceeded the jurisdiction that 28 U.S.C. § 636 imposes on magistrates and "at the time of the framing . . . a warrant issued for a search or seizure beyond the territorial jurisdiction of a magistrate's powers under positive law was treated as no warrant at all." Id. at 214 (quoting U.S v. Krueger, 809 F.3d 1109, 1123 (10th Cir. 2015)).

Having established that a Fourth Amendment violation occurred, the Third Circuit then addressed the issue of whether "the good-faith exception to the exclusionary rule appl[ies] when a warrant is void *ab initio* due to the magistrate judge lacking jurisdiction to issue it." Id. at 215.

---

[2] At the time the NIT warrant was issued, the Rule also authorized four exceptions to this territorial restriction: (1) for property that might be moved outside the district before the warrant, (2) for terrorism investigations, (3) to install a tracking device within the magistrate's judge's district that may track the movement of property outside that district, and (4) to search and seize property located outside any district but within the jurisdiction of the United States. Fed. R. Crim P. 41(b)(2)–(5). The Third Circuit found that none of these exceptions applied. Werdene, 883 F.3d at 210–11.

The Court noted that the exclusionary rule is a prudential doctrine that prevents the government from relying on evidence at trial obtained in violation of the Fourth Amendment. Id. That rule, however, is not automatically applicable in the face of every Fourth Amendment violation; "[r]ather, the exclusionary rule aims to *deter* government violations of the Fourth Amendment" and suppression of evidence is a "last resort" not a "first impulse." Id. (emphasis in original). Turning to an application of the good-faith exception to the facts before it, the Third Circuit held that, upon consideration of the circumstances surrounding the FBI agents' receipt of the Eastern District of Virginia warrant, the good faith rule should apply and the evidence obtained as fruits of that warrant should not be excluded, reasoning:

> Here, the NIT warrant was issued by a neutral and detached, duly appointed magistrate judge, who determined that the warrant was supported by probable cause and particularly described the places to be searched and things to be seized. This, on its own, is sufficient for us to determine that the FBI acted in good-faith, especially because there is no evidence that it exceeded the scope of the warrant. See Leon, 468 U.S. at 922, 104 S. Ct. 3405 ("'[A] warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" (quoting United States v. Ross, 456 U.S. 798, 823, n.32, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982))); see also Pavulak, 700 F.3d at 663 ("Ordinarily, the 'mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith.'" (quoting Stearn, 597 F.3d at 561)).
>
> The Rule 41(b) error, therefore, was committed by the magistrate judge, not the FBI agents who reasonably relied on the NIT warrant, and we have repeatedly recognized that "officer[s] normally should not be penalized for the magistrate's mistake." Doe v. Groody, 361 F.3d 232, 244 (3d Cir. 2004); see also United States v. $ 92,422.57, 307 F.3d 137, 152 (3d Cir. 2002) ("When a Magistrate Judge has [issued a warrant], law enforcement officers, who are rarely attorneys, are entitled to rely on the Magistrate Judge's judgment").
>
> More importantly, the exclusionary rule "applies *only* where it 'result[s] in appreciable deterrence.'" Herring, 555 U.S. at 141, 129 S.Ct. 695 (quoting Leon, 468 U.S. at 909, 104 S. Ct. 3405)

> (emphasis added). Thus, even though Rule 41(b) did not authorize the magistrate judge to issue the NIT warrant, future law enforcement officers may apply for and obtain such a warrant pursuant to Rule 41(b)(6), which went into effect in December 2016 to authorize NIT-like warrants. Accordingly, a similar Rule 41(b) violation is unlikely to recur and suppression here will have no deterrent effect. This is dispositive because when the deterrent value of suppression is diminished, the "deterrence rationale loses much of its force and exclusion cannot pay its way." Katzin, 769 F.3d at 181 (quoting Leon, 468 U.S. at 907 n.6, 104 S. Ct. 3405).

Id. at 217–218. With this ruling, the Third Circuit joined the First, Fourth, Eighth, and Tenth Circuits, all of which concluded that, even if the NIT warrant at issue in this case violated the Fourth Amendment, the good faith exception applied and suppression was not warranted. See United States v. Levin, 874 F.3d 316, 322–23 (1st Cir. 2017); United States v. McLamb, 880 F.3d 685, 690–91 (4th Cir. 2018); United States v. Horton, 863 F.3d 1041, 1051–52 (8th Cir. 2017), cert denied, No. 17-6910, 2018 WL 1568107 (U.S. Apr. 2, 2018); United States v. Workman, 863 F.3d 1313, 1317–20 (10th Cir. 2017), cert. denied, 2018 WL 1786016 (Apr. 16, 2018).

Werdene is binding here. Accordingly, although the NIT warrant violated the Fourth Amendment, the agents in the Eastern District of Virginia—the same agents as in Werdene—acted in good faith in obtaining the search warrant there. Suppression of the evidence obtained against Defendant is, therefore, not merited. In turn, because any motion to suppress the search warrant would have been meritless, counsel could not have been ineffective. I will overrule Defendant's objection and adopt the R&R on this ground.

### C. Whether the Magistrate Judge Erred in Finding that Trial Counsel Was Not Ineffective in Failing to Litigate a Motion to Dismiss for Outrageous Conduct

Defendant's final objection alleges that the Magistrate Judge improperly declined to find trial counsel ineffective for failing to litigate a Motion to Dismiss for Outrageous Conduct.

Specifically, Defendant alleges that the Government conduct in this case was "unimaginable": "in an effort to catch those who view child pornography they operated the largest child pornography website in the world for a period of two weeks." He asserts that permitting the operation of the website, the Government essentially promoted the conduct it sought to punish.

On consideration of this issue in connection with the R&R, Judge Rueter found that the FBI conduct in this case does not rise to the level of "shocking, outrageous, and clearly intolerable conduct" necessary for the application of the outrageous government conduct defense. He remarked that the FBI "neither created the Playpen website, nor induced the defendant to become a member. The FBI did not post child pornography, or links to child pornography, to the website and did not create defendant's desire to view and download child pornography." (R&R 11.) He further noted that "[a]ll of the courts that have considered this issue 'have declined to dismiss the Playpen indictments under the outrageous conduct defense.'" (Id. (citing cases).)

I agree with Judge Rueter. The United States Supreme Court has recognized that outrageous misconduct by law enforcement officers in detecting and obtaining incriminating evidence could rise to the level of a due process violation. Rochin v. California, 342 U.S. 165, (1952) (vacating conviction and dismissing indictment where police had pumped stomach of suspected drug pusher to obtain incriminating evidence). Nonetheless, the judiciary is "extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause." U.S. v. Voigt, 89 F.3d 1050, 1065 (3d Cir. 1996). Indeed, the Third Circuit has observed that "the majority of the Court has manifestly reserved for the constitutional defense only the most intolerable government conduct." U.S. v. Jannotti, 673 F.2d 578, 608 (3d Cir.

1982) (*en banc*). "As a result, the doctrine of outrageous government misconduct, although often invoked by defendants, is rarely applied by courts." Voigt, 89 F.3d at 1065.

Here, I find no government conduct that could be characterized as so offensive as to violate the Due Process Clause. The FBI did not create the Playpen website. Rather, it was a website that already existed. The FBI took control of the site and, in lieu of immediately shutting it down, allowed it to continue to operate for two weeks for the sole purpose of identifying and apprehending existing users of the site. There is no indication that the FBI enhanced the site in any way or set out to attract new users. Nor did the FBI induce Defendant—who had established an account on the site prior to the FBI's involvement—to visit the site and download pornography. Nothing in these facts suggests that the Government's conduct here was so intolerable as to require the rare invocation of the outrageous misconduct doctrine.

## IV. CONCLUSION

In light of the foregoing, I will adopt the R&R in its entirety, overrule Defendant's Objections, and deny the Petition for Writ of Habeas Corpus. I find no probable cause to issue a certificate of appealability.